UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLYANN FERGUSON,

              Plaintiff,                        Civil Action No. 13-10558

        v.                                District Judge Lawrence P. Zatkoff
                                       Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION TO**
**DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND**
**GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff Shellyann Ferguson appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her applications for disability insurance benefits and supplemental security income. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 3) are the parties' cross-motions for summary judgment (Dkts. 14, 18). For the reasons set forth below, this Court finds that substantial evidence supports the decision of the Administrative Law Judge. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 14) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 18) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Plaintiff dropped out of high school in the ninth grade and has not completed her GED certificate. (Tr. 71.) Her past work history includes employment in several doughnut shops and as a machine operator. (Tr. 63, 94-95.) She claims that she has chronic problems with her concentration and memory that prohibit her from returning to work. (Tr. 52.) She also alleges that she suffers from migraine headaches, depression, anxiety, and anemia. (*Id*.)

### A. Procedural History

In April 2008, Plaintiff applied for disability insurance benefits and supplemental security income asserting that she became unable to work in January 2007. (Tr. 153-54, 299, 302.) Plaintiff's disability applications were denied at the initial level on December 2, 2008. (Tr. 153-56.) Plaintiff then requested an administrative hearing, and on April 21, 2010, she appeared with counsel before Administrative Law Judge Lance K. Hiltbrand, who considered her case *de novo*. (Tr. 143-87.) In a June 18, 2010 decision, ALJ Hiltbrand found that Plaintiff was not disabled within the meaning of the Social Security Act.[1] (*See* Tr. 157-72.)

Plaintiff then requested that the Appeals Council review the ALJ's decision. (Tr. 44.) The Appeals Council granted Plaintiff's request and remanded the case for further proceedings. (Tr. 175-77.) Specifically, on remand, the Appeals Council indicated that the ALJ would:

> Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available, a

---

[1] ALJ Hildbrant determined that Plaintiff was not disabled because she retained the capacity to perform a range of light work subject to certain restrictions and that, as a result, she could return to her past work as a cashier. (Tr. 160-68.)

2

consultative examination and medical source statements about what the claimant can still do despite the impairment.

Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.l520a and 4l6.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.l520a(c) and 4l6.920a(c).

Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1512 and 416.912).

If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12 and 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 176.)[2]

---

[2] Although Plaintiff makes a general argument that the ALJ did not adhere to the Appeals Council's directives, the arguments in her motion do not specifically address these points. (*See* Pl.'s Mot. Summ. J. at 15-26.)  Moreover, as discussed herein at *supra* Part IV, Plaintiff's failure to cite specific evidence to support her arguments is fatal to her claims.  The Court also notes that the Appeals Council denied Plaintiff's arguments in her second request for review.  (Tr. 1-5.)

On October 14, 2011, Plaintiff appeared before ALJ JoErin O'Leary and testified with the presence of counsel.  (Tr. 47-103.)  On November 22, 2011, ALJ O'Leary concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 19-32.)  Her decision became the final decision of the Commissioner on January 23, 2013, when the Social Security Administration's Appeals Council denied Plaintiff's second request for review.  (Tr. 1-5.)  Plaintiff filed this suit on February 11, 2013.  (Dkt. 1, Compl.)

**B.  Testimony at the Hearing Before the ALJ**[3]

*1.  Plaintiff's Testimony*

Plaintiff testified about her education and prior employment history.  Plaintiff testified that she had just started the ninth grade when she left school and has not obtained a GED.  (Tr. 71.)  She said that she left school because it was "too hard."  (*Id.*)  She indicated that most of her prior jobs were in doughnut shops working the counter and register.  (Tr. 63.)  She provided that she did not think she could go back to that type of work because she did not understand the "new systems" meaning the new cash registers.  (Tr. 64.)  She also had some prior experience working as a machine operator treating and/or cleaning CDs, where she sat most of the time.  (Tr. 94-95.) Plaintiff said that she had not worked for pay since she was disabled in 2007.  (Tr. 52.)

Plaintiff also testified about the reasons she believed that she could not engage in full-time employment.  Plaintiff explained that she was struggling with memory and cognitive problems, migraine headaches, anxiety, and depression.  (*Id.*)  At the time she stopped working she also had anemia and required a hysterectomy and blood transfusion.  (*Id.*)  Plaintiff indicated that she was

---

[3] Unless otherwise indicated, the testimony given by Plaintiff and the vocational expert were given during the October 14, 2011 hearing before ALJ O'Leary.

unsure whether she still suffered from anemia, but that she still felt tired most of the time. (Tr. 53.)
In response to the ALJ's question of what is keeping Plaintiff from working, she responded:
"Remembering to do my job." (*Id*.)

Plaintiff also testified about her physical limitations. Plaintiff indicated that it hurt to stand.
(*Id*.) Plaintiff specified that her pain was "mostly in her back and it [went] to [her] feet and [she
would] swell up like balloons." (Tr. 54.) Plaintiff testified that she could not stand on her legs for
more than one hour before they started to swell. (Tr. 71.) Plaintiff also thought that constant
migraine headaches were preventing her from working. (Tr. 69, 71.) Plaintiff said that she was
taking propranolol and cymbalta for pain. (Tr. 54-55.) Plaintiff testified that she had no side effects
from the medications, but that she was not experiencing much benefit from the propranolol. (Tr.
55.) Plaintiff indicated that she was taking medication all the time. (Tr. 69.) She also experienced
vomiting and nausea every day because of her migraines. (Tr. 69.) Her migraines "sometimes"
affected her ability to eat and made her feel sick in the morning. (Tr. 70.) They also affected her
equilibrium, which made her feel dizzy. (*Id*.) Plaintiff testified that she would not be able to focus
on her job if she was having a headache accompanied with dizziness. (*Id*.)

Plaintiff also testified about problems with her memory. She indicated that she has had
problems with her memory all of her life. (Tr. 56.) Her memory problems had gotten worse
recently, but she did not know why. (Tr. 64.) Plaintiff also testified that she had difficulty staying
focused and concentrating on things. (Tr. 65.) For example, she said she was unable to read an
article in a newspaper and remember what she read. (*Id*.) However, she acknowledged that she
could remember the ALJ's questions well enough to offer proper responses. (Tr. 66.) Plaintiff
testified that she could not watch a television show or movie and then have a discussion about what

5

she had just watched.  (Tr. 67.)  Plaintiff also left things and is forgetful.  (*Id*.)  Plaintiff testified that

she had trouble remembering sequential steps of a process, and this was one of the reasons she had

trouble keeping a job.  (Tr. 68-69.)  Plaintiff could not remember where she went to high school

other than she went to school in Massachusetts.  (Tr. 69.)

Plaintiff testified to her home life and daily routine.   She indicated that she was living in a

house with her fiancé. (Tr. 58.)  She tried to clean, but needed to take breaks.  (Tr. 58.)  Plaintiff said

that she was "just basically tired."  (Tr. 57.)  She testified that she would wake up "early in the

morning because the pain [woke] [her up]" and then she would drink her coffee, sit on the couch,

and watch TV.  (Tr. 56.)  During the day, she would get tired and sleep on the couch.  (*Id*.)  Plaintiff

said that "it [took] a lot, but" she still showered everyday.  (Tr. 57.)   Plaintiff also said she still

drove a car.  (Tr. 58.)

Plaintiff also testified to her visits with medical professionals.  She indicated that she saw

a counselor once per week and Dr. Brown, who she referred to as a "regular doctor," once per week.

(Tr. 59.)  She indicated that Dr. Brown worked with a chiropractor who performed adjustments on

her neck in an effort to alleviate her headaches.  (Tr. 59-60.)  Plaintiff also testified to seeing a case

manager, who helped her with paperwork because she did not "understand what people hand to

[her]." (Tr. 60.)  Plaintiff said, "I can't fill it out.  Somebody else has to help me with it."  (Tr. 60.)

Plaintiff also testified that she had been referred to a psychiatrist, but had not yet met with her.  (*Id*.)

In addition to the adjustments mentioned above, Plaintiff also testified about other types of

treatment she has pursued, including ice packs on her head and neck, and a fan.  (Tr. 62.)  Plaintiff

also indicated that pressure makes her headaches worse, "like [when] [she] bend[s] down and

come[s] up."  (*Id*.)

### 2. *Ms. Fulsom's Testimony*

Amy Folsum, a master's level licensed professional therapist, also testified at the hearing. (Tr. 74.)  Folsum said she provided treatment at the Helen Nickless Clinic.  (*Id.*)  Fulsom indicated that she had been treating Plaintiff on a weekly basis for three months.  (Tr. 76.)  Fulsom provided that just before the hearing, she referred Plaintiff to Crossroads for private therapy with a psychiatrist, Dr. Usha Movva.  (Tr. 74-75.)  A few days prior to the hearing, Dr. Movva had changed Plaintiff's depression medication from Zoloft to Cymbalta.  (Tr. 76.)  Fulsom indicated that she was unsure whether this change in medication would have any impact on Plaintiff's functioning.  (*Id.*)

Fulsom indicated that Plaintiff had not undergone any neuropsychological testing.  (Tr. 85.)  Also, Plaintiff had not suffered a traumatic brain injury, and nothing appeared on her brain MRI. (*Id.*)  Fulsom testified that Plaintiff's limitations appeared to be caused by "some type of learning disability that she was born with,"  but were not caused by any psychosis or psychotic process.  (Tr. 87.)  Fulsom testified that "a small part of [Plaintiff's] fatigue and[,] of course[,] [her] tearful episodes [were]coming from the depression."  (*Id.*)  Moreover, these depressive episodes had worsened lately, which was why Dr. Movva changed her Zoloft prescription to Cymbalta.  (Tr. 87-88.)  Fulsom indicated that she was hopeful to see a marked improvement with Cymbalta.  (Tr. 88.)

Fulsom testified to Plaintiff's depression.   She believed Plaintiff was depressed, but not a depressed person.  (Tr. 76-77.)  Rather, Fulsom characterized Plaintiff as having recurring major depressive episodes.  (Tr. 77.)  Fulsom continued:

> I think part of the depression comes from not being able to do things that she expects of herself. To be this normal person that she talks about. Being able to work and take care of the house, and have relationships and do all of the things that she thinks that normal people do. And so that is very much affecting her self esteem and so I think part of those things have, you know, kind of lead her into the

depression.

(Tr. 77.)

Fulsom also testified to Plaintiff's memory issues.  She indicated, though, that she had not interacted with the physicians at the clinic regarding Plaintiff's memory.  (*Id.*) Fulsom testified that their counseling sessions were "very difficult" and like "starting over" every time because of Plaintiff's lack of memory.  (Tr. 78-79.)  Explaining a typical counseling session, Fulsom explained:

> I'll draw that information from her if I start giving either just visual cues to draw the information from her. What would you do? What'd you do on, you know, Tuesday, Wednesday? I'll bring in information about her fiancé. Where is he? Sometimes she has started on her own keeping track of things in her planner and sticky notes to help keep track of this stuff. But to kind of give a run down as a summary from the last time that we met. We were working on this and let's proceed from there, that doesn't happen. It's kind of starting over. What kinds of things are you doing to take care of yourself? Where's your depression today? How many tearful episodes have you had? When you ask her a specific question like that, like ask for a number of something or a date or something it does not come from her memory. Long term or short term memory.

(Tr. 78-79.)  Fulsom believed that Plaintiff would have difficulty maintaining concentration during the course of a normal work day because she has difficulty concentrating during a 45 minute therapy session.  (Tr. 80-81.)  As an example, Fulsom testified:

> She topic jumps. She'll be talking about something and I'll be ready to do a follow up question and she just set something else. I mean she'll just bring up a different topic and she recognizes it. She'll say I'm jumping all the place and she describes in her world outside the sessions that people can't follow that. But, you know, I just reassure her that I can and I'll go with her where she's going and try to bring back if there's something we need to look into. But her thought process skips around to different things.

(Tr. 81.)  Fulsom testified that she believed that Plaintiff would require "an inordinate or extraordinary amount of supervision to keep her on task."  (*Id.*)  Fulsom estimated that, without that

8

type of supervision, Plaintiff could stay on task for ten to 15 minutes. (Tr. 82.) She also agreed that Plaintiff would be off-task for more than 20 percent of the work day. (*Id*.) Fulsom indicated that Plaintiff had kept her scheduled appointments, except for possibly one, and had been on time for her appointments. (Tr. 82-83.) One of the resources provided to Plaintiff was a case manager, Sawyer Plume. (Tr. 89.) Fulsom indicated that Plume assisted Plaintiff with some of her "concrete needs" like completing paperwork, sorting mail, understanding legal documents, and attending doctor's appointments. (Tr. 89-90.) Plaintiff would require Plume's services on a long term basis and typically case management appointments start at about one time per month, but could relax to one time every three months. (Tr. 91.) Fulsom testified that in her 12 years of counseling, she found Plaintiff's memory issues to be "extreme." (Tr. 83.)

Fulsom indicated that she believed that Plaintiff had progressed during therapy. (Tr. 79.) Specifically, Fulsom indicated that she was working with Plaintiff on minimizing self-defeating behaviors. (*Id*.) Fulsom also testified that Plaintiff was working on using memory tools, for example keeping notes, keeping a planner, and organizing her thoughts and activities. (Tr. 80.) Fulsom also testified to working with Plaintiff on improving her self-care. (*Id*.)

### 3. The Vocational Expert's Testimony

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience who was capable of light exertional work. In addition, they would have to avoid "concentrated exposure to cold, noise, and vibration" and was further limited to

> simple, routine, and repetitive tasks only. They would have to work
> in a low stress work environment which for this hypothetical would

> be defined as having only occasional changes in the work setting. Only occasional use of independent judg[]ment and only occasional decision making. They would have to deal primarily with things rather than people although they could tolerate working around other people. This individual could not perform at anymore than average production standards.

(Tr. 96.)  The VE testified that such an individual would not be able to perform any of Plaintiff's past work.  (Tr. 97.)  The ALJ then asked whether there would be any jobs that the hypothetical plaintiff could perform.  (Tr. 97.)  The VE indicated that a "conservative interpretation" would be to limit the jobs to those with a Dictionary of Occupational Titles Specific Vocational Preparation of 1.  The VE explained that an SVP of 1 is "the easiest of the unskilled jobs that you should be able to learn just by watching it in a day or less."  (*Id*.)  The VE testified that if an individual does not have an SVP level 1 job perfected within a "couple days" they are not fit for it.  (Tr. 98.)  The VE identified the following jobs that were available in that category: 1) hand packager (e.g., bottling line attendant) (1,300 jobs regionally); 2) production worker or assembler (e.g., punch board assembler) (2,200 jobs regionally); 4) machine operator tender (e.g., wire cutter) (2,800 jobs regionally). (Tr. 97.)

If the same hypothetical individual was also unable to maintain concentration and attention such that they would be off task about 20 percent of the work day, the VE testified that all competitive work would be eliminated.  (Tr. 98.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'"  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any

10

> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ O'Leary found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 10, 2007. (Tr. 21.) At step two, she found that Plaintiff had the following severe impairments: migraines, anemia, anxiety, depression, and cognitive disorder. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in

11

combination, met or medically equaled a listed impairment.  (Tr. 22.)  Between steps three and four,

the ALJ determined that Plaintiff had the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except she must avoid concentrated exposure to cold, noise, and
> vibration. The claimant is limited to simple, routine, and repetitive
> tasks. She has to work in a low stress work environment. Low stress
> being defined as only occasional changes in the work setting, only
> occasional use of independent judgment, and only occasional
> decision making. The claimant requires a position where she deals
> with things rather than people. She can tolerate working around
> people. The claimant cannot perform at anymore than average
> production standards.

(Tr. 25.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

(Tr. 31.)  At step five, the ALJ found that sufficient jobs existed in the national economy for

someone of Plaintiff's age, education, work experience, and residual functional capacity.  (*Id.*)  The

ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from

the alleged onset date through the date of her decision.  (Tr. 32.)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm

the Commissioner's conclusions absent a determination that the Commissioner has failed to apply

the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation

marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks

omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*, 499 F.3d at 509;  *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

The Court is troubled by the cursory nature of Plaintiff's arguments.  Plaintiff raises four claims of error: (1) the ALJ erred by discounting her credibility; (2) the ALJ failed to give deference to the opinions of her treating physicians; (3) the ALJ failed to incorporate all of her limitations into the residual functional capacity assessment ("RFC"), therefore, the RFC is not supported by substantial evidence; and (4) the ALJ failed to properly consider Plaintiff's GAF scores.  (Pl.s Mot.

13

Summ. J. at 15-26.) Yet, in raising these claims, Plaintiff only cites to the ALJ's opinion four times, and never once cites to the record.  (*See id*, at 23, 24.)

Given the generalized nature of Plaintiff's arguments, the Court begins by emphasizing a matter of appellate procedure: it is Plaintiff's burden to demonstrate that the ALJ erred. *Lopez v. Barnhart*, No. 04-0745, 2005 WL 1630551, at *5 (W.D. Tex. July 11, 2005) ("It is plaintiff's burden to prove that the ALJ's decision was not made in accord with the applicable legal standards or not supported by substantial evidence. . . ."); *Raboubi v. Barnhart*, No. C-03-01613, 2003 WL 22458903, at *4 (N.D. Cal. Oct. 24, 2003) ("Plaintiff bears the burden of establishing that the ALJ's decision was not based on substantial evidence or that the ALJ's decision was based on legal error."). Indeed, one court has reasoned that the placement of the burden is inherent in substantial evidence review:

> [The substantial evidence] standard of review assumes, of course, that a claimant has made an argument and identified specific aspects of the ALJ's decision that allegedly lack support in the record. Where a claimant has not done so, the Sixth Circuit has:
>
>> . . . decline[d] to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in her brief on appeal.
>
> *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and quotation marks omitted)).

14

*Shiveley v. Astrue*, No. 2:11-cv-313, 2012 WL 1231819, at *1 (E.D. Ky. Apr.12, 2012). Accordingly, the Court will not develop the particulars of Plaintiff's arguments for her.

### A. Credibility

Plaintiff argues that the ALJ erred in discounting her credibility and for failing to provide good reasons for finding a lack of credibility. (Pl.'s Mot. Summ. J. at 20-21.) The Commissioner contends that Plaintiff's "citation-free argument" amounts to little more than a request that this Court reweigh the evidence. (Def.'s Mot. Summ. J. at 4.) Indeed, Plaintiff's argument makes no references to the record, and fails to direct the Court to specific examples of how the ALJ erred in assessing Plaintiff's credibility. Instead, Plaintiff merely relies on generic legal claims and sets forth the law governing credibility claims. (Pl.'s Mot. Summ. J. at 20-21.)

For reasons that follow, the Court finds that Plaintiff's arguments, in the manner presented, do not establish that the ALJ erred in assessing her credibility.

First, this Court agrees with the Commissioner that the ALJ conducted a comprehensive credibility assessment and gave considerable weight to Plaintiff's testimony as evidenced by the RFC assessment. The RFC finding limits Plaintiff to light work with several additional restrictions. For example, the ALJ credited Plaintiff's testimony that she could not concentrate for long periods of time by restricting her to simple, routine, and repetitive tasks; work in a low stress environment, which the ALJ defined as work involving only occasional changes in the work setting; work requiring only occasional independent judgment and decision making; work limiting her contact with other people; and work that does not require fast-paced production standards. (Tr. 25.)

The undersigned also agrees that the ALJ gave good reasons for discrediting Plaintiff. (Tr. 25-30.) ALJ O'Leary found that Plaintiff's August 2008 function reports indicated that she could

15

take care of her pets, had no difficulty with personal care activities, could prepare meals, went outside, cleaned her house, did her laundry, ironed, drove, shopped, read, and watched television. (Tr. 30, 344-47.)  "An ALJ may . . . consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments." *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997). In addition, the ALJ noted that Plaintiff's friend indicated that she was able to go to parks, to the beach, clean her house, and take care of her mentally disabled son.  (Tr. 30, 351-52.)  The ALJ considered that these activities were limited by Plaintiff's memory problems and fatigue, but concluded that her allegations were not corroborated by the record.  (Tr. 30.)

The ALJ also noted that Plaintiff received limited medical care for her impairments.  Agency regulations permit an ALJ to consider a claimant's failure to seek medical treatment when evaluating the credibility of that claimant's assertions.  SSR 96-7p, 1996 WL 374186, at *7 (1996)  (An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.")  The ALJ noted that Plaintiff claimed that her anemia had received little regular or ongoing medical treatment and that a recent hematocrit test had been normal.  (Tr. 30, 58-59).  Although the regulations require an ALJ to discount these findings when a claimant provides good reasons for a failure to seek treatment, SSR 96-7p, at *7, this Court agrees with the Commissioner that none are present here. Ferguson's hearing testimony also shows that she was seeking medical treatment for both her physical and mental impairments at the time of the second hearing in October 2011.  As a result, the ALJ considered that Plaintiff sought relatively limited treatment for her anemia and reasonably concluded that the lack of treatment undermined Plaintiff's claims that her anemia was disabling. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th

Cir. 2009); *see also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 806 (6th Cir. 2011).

The ALJ also reasoned that discrepancies between the record and Plaintiff's allegations suggested that she was exaggerating her symptoms and limitations. (Tr. 30.) For example, the ALJ noted that Plaintiff claimed on a function report that her impairments affected her ability to do everything but talk, hear, and get along with others. (Tr. 30, 348.) And, a February 2009 function report provided that Plaintiff was limited in all activities except her ability to sit. (Tr. 30, 374.) The ALJ also noted that Plaintiff claimed that she had a five second attention span. (30, 348, 374.) In contrast to these extreme claims were Plaintiff's admissions that she could shop, read, watch television, cook, and drive. (Tr. 30, 346-47, 372.) Indeed, courts have noted the ability to read suggests the ability to concentrate. *See, e.g., Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) ("While we are skeptical that the ability to watch television for several hours indicates a long attention span, we agree that reading and playing cards do suggest such a trait.").

The ALJ also noted a doctor who suggested that Plaintiff may be malingering. Dr. Movva, who conducted a psychiatric evaluation of Plaintiff in October 2011, characterized Plaintiff's responses as "evasive and vague," suggesting that Plaintiff was attempting to influence the evaluation. (Tr. 30, 624-25.)

This Court concludes that the ALJ provided a comprehensive explanation for her conclusions that Plaintiff's subjective allegations of disabling limitations were not entirely credible. Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason. *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011). The Court finds no such compelling reason here.

## B.  Opinion Evidence

Plaintiff claims that the ALJ failed to give deference to the opinions of her treating physicians.  (Pl's Mot. Summ. J. at 17-19.)  Again, Plaintiff makes no references to the record in her argument to the Court.  She cites the legal standard for the treating physician rule and argues that the ALJ failed to accord Dr. Don DelBeato, a state consultative examiner, and Dr. Movva, as well as Fulsom due deference.  (*Id*. at 19.)  As noted above, it is Plaintiff's burden to demonstrate that the ALJ erred.  *McPherson*, 125 F.3d at 995-96.  Nevertheless, this Court agrees with the Commissioner that the ALJ properly weighed the opinion evidence.

As correctly pointed out by the Commissioner, none of the medical sources identified by Plaintiff (Dr. DelBeato, Dr. Movva, or Fulsom) were treating sources, therefore, the treating-source rule, *see* 20 C.F.R. § 404.1527; SSR 96-2p, did not apply.

Dr. DelBeato was the state consultant who examined Plaintiff on two occasions.  Our Court of Appeals says that a physician who sees a claimant only twice is usually not a treating source, and Plaintiff has offered no argument for why Dr. DelBeato should be characterized otherwise. *See Kornecky v. Comm'r of Soc. Sec*., 167 F. App'x 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. . . . Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship."); *Helm v. Comm'r of Soc. Sec*., 405 F. App'x 997, 1001 n.3 (6th Cir. 2011) (noting "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source").  And the rationale behind this rule-of-thumb applies here: treating-source physicians are held in special regard because of their "detailed, longitudinal picture" of the claimant;

18

absent that, there may not be much, if any, difference between a treating physician and one who performs a consultative exam. 20 C.F.R. § 416.927(c)(2) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").

Similarly, though Plaintiff submitted additional evidence reflecting that Dr. Movva treated her several times after her initial October 2011 evauation (Tr. 623-625), only the October 2011 evaluation was before the ALJ when she rendered her decision—the later evidence was added to the record before the Appeals Council. (Tr. 4, 626-746.) Judicial review of the Commissioner's final decision is based only on the evidence of record compiled by the agency and before the ALJ at the time of his decision. *See Mathews v. Weber*, 423 U.S. 261, 270, 96 S. Ct. 549, 46 L. Ed. 2d 483 (1976); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) ("Only evidence in the record below can be considered [by the court] when determining whether or not the ALJ's opinion was supported by substantial evidence . . . .") Therefore, a reviewing court may not look outside that record in reviewing the correctness of the ALJ's decision. *See Mathews*, 423 U.S. at 270; *Cotton v. Sec'y of HHS*, 2 F.3d 692, 695 (6th Cir.1993); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996) ("[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."). Because Dr. Movva's subsequent notes (Tr. 626-746) could not have been considered by the ALJ below, and because Plaintiff has not requested a sentence six remand pursuant to 42 U.S.C. § 405(g), this Court cannot consider the evidence in determining whether the ALJ improperly weighed Dr.

Movva's opinion. For these reasons, this Court concludes that Plaintiff has not identified any errors with the ALJ's weighing of Dr. Movva's opinion.

Finally, Plaintiff argues that the ALJ erred by not crediting the testimony of Plaintiff's therapist, Fulsom. But, as noted by the ALJ, Fulsom is not an "acceptable medical source" and, as such, cannot be entitled to controlling weight under the treating source rule. *See* 20 C.F.R. § 404.1502 (noting that only an "acceptable medical source" may be considered a "treating source"). In keeping with SSR 06-03p, the ALJ did evaluate Ms. Fulsom's testimony under 20 C.F.R. § 404.1513(d). Thus, this Court finds no error in the ALJ not giving controlling weight to Fulsom's testimony and Plaintiff has made no additional arguments regarding the weighing of her opinions.

### C.  Substantial Evidence & Hypothetical Question

Plaintiff also makes several cursory arguments that challenge the ALJ's RFC assessment, but never fleshes out these arguments for the Court to understand where the ALJ erred. (Pl's Mot. Summ. J. at 15-16, 16-17, 25-26.) Indeed, as noted above, Plaintiff never identifies in the record where substantial evidence fails to support the ALJ's findings. Instead, Plaintiff merely states, without guiding the Court to particulars, that the ALJ incorporate her "severe fatigue and cognitive deficits, particularly . . . the impact of the deficits upon concentration, persistence and pace." (*Id*. at 15.) Without more, this Court finds that in light of the ALJ's reasonable adverse credibility findings, the RFC finding was reasonable.

Indeed, as noted above, the ALJ partially credited Plaintiff's allegations regarding her concentration deficits and fatigue. Relying on Dr. Efren Baltazar, the state-agency doctor who assessed Plaintiff's physical impairments, the ALJ concluded that Plaintiff should be limited to light work, with no exposure to extreme cold, noise, or vibration. (Tr. 26, 498-505.) More importantly,

20

relying on Dr. Jill Rowan, the state-agency doctor who reviewed Plaintiff's mental impairments, the ALJ concluded that Plaintiff should be limited to work involving simple, routine tasks; work involving limited interaction with others; work in a low stress work environment; work involving only occasional use of independent judgment or decision-making; and work involving no more than average production standards. (Tr. 25, 29, 480).

Again, in light of her reasonable adverse credibility finding and resulting decision to discount the more limiting opinions of Dr. DelBeato, Dr. Movva, and Ms. Fulsom, this Court concludes that the ALJ's RFC finding was well within the zone of reasonable choices permitted by the record evidence. *See Mullen*, 800 F.2d at 595.

Plaintiff also claims that the ALJ gave the vocational expert an improper hypothetical by failing to accurately account for her impairments. (Pl.'s Mot. Summ. J. at 15.)

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments.*" Parley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir.1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 632 (6th Cir. 2004). That said, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987).

As discussed above, this Court has determined that substantial evidence supports the ALJ's credibility determination. Moreover, the ALJ did not err in her RFC determination, and because the hypothetical tracked the RFC, this claim of error fails for the reasons stated.

### D.  GAF Scores

Plaintiff also claims that the ALJ erred by failing to consider her "seriously depressed" GAF scores. (Pl.'s Mot. Summ. J. at 24.) Specifically, Plaintiff claims that the ALJ dismissed Plaintiff's GAF scores of 47 (assessed by Dr. DelBeato) and 50 (by Dr. Movva) without adequate consideration or analysis. (*Id.* (citing Tr. 68).)

A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 30-34 (4th ed., Text Revision 2000). It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. A GAF score of 41 to 50 reflects "[s]erious symptoms (e.g. suicidal ideation, severe obsession rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV at 34.

Because of this definition, Circuit Courts, including the Sixth Circuit, have made clear that such scores are of limited probative value in a Social Security disability analysis. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("Because the final GAF rating always reflects the worse of [severity of symptoms and functional level], the score does not reflect the clinician's opinion of functional capacity." (internal quotation marks and citation omitted)); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place. . . . If other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that she is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as Kornecky's [40-45, 46, 52, 50-55] or even lower."); *DeBoard v. Comm'r of Soc.*

22

*Sec.*, 211 F. App'x 411, 415 (6th Cir.2006) ("[T]he Commissioner 'has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings.' " (quoting *Wind v. Barnhart*, No. 04-16371, 2005 WL 1317040, at *6 n.5 (11th Cir. Jun. 2, 2005))).

This Court previously determined that substantial evidence supports the conclusion that Plaintiff is not disabled, which was supported by the extent of Plaintiff's daily activities, therefore, the ALJ did not err in her treatment of Plaintiff's GAF scores. *See Kornecky*, 167 F. App'x at 511.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the decision of the Administrative Law Judge.  The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 14) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 18) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*,

454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson
Laurie J. Michelson
United States Magistrate Judge

Dated: February 25, 2014

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on February 25, 2014.

s/Jane Johnson
Case Manager to
Magistrate Judge Laurie J. Michelson